Benjamin A. West, Esq., SBN: 338727
bwest@fbtlaw.com
**FROST BROWN TODD, LLC**
2101 Cedar Springs Road, Suite 900
Dallas, Texas 75201
Telephone: (214) 545-3472
Facsimile: (214) 545-3473

*Attorneys for Plaintiff*
*SUSA Financial, Inc. dba FirstFunding, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SUSA FINANCIAL, INC. dba FIRSTFUNDING, INC.,<br><br>       Plaintiff,<br><br>v.<br><br>SPROUT MORTGAGE, LLC,<br><br>       Defendant. | Case No.  8:22-cv-01864<br><br>**COMPLAINT FOR:**<br><br>**(1)  BREACH OF CONTRACT**<br>**(2)  INJUNCTION** |

Plaintiff SUSA Financial, Inc. dba FirstFunding, Inc. ("FirstFunding"), in its capacity as lender under the Warehouse Funding Agreement, dated as of October 5, 2020 (as amended, restated or otherwise modified, the "Funding Agreement"), by and between FirstFunding and defendant Sprout Mortgage, LLC ("Sprout"), hereby brings this action to recover all payments made with respect to the mortgage loans and related collateral (including, without limitation, all related files, servicing files and servicing rights) that collateralize Sprout's obligations under the Funding Agreement (such mortgage loans, the "Pledged Mortgage Loans") held at any and all accounts which were opened or maintained at Banc of California, or any branch or office thereof in California, by, or for the benefit of, Sprout (such payments, the "Monies Due") and alleges as follows.[1]

## PARTIES

1.      FirstFunding is a Texas corporation with its principal place of business at 1 First American Way, Santa Ana, California 92707. Operating as a wholly-owned subsidiary of First American Financial Corporation, FirstFunding offers warehouse lending facilities to mortgage lenders, banks, credit unions, and secondary-market investors.

2.      Sprout is a Delaware limited liability company with its principal place of business at 90 Merrick Avenue, East Meadow, New York 11554, and neither it nor its members is a citizen of the State of California. Licensed by the Department of Financial Protection and Innovation under the California Residential Mortgage Lending Act (CRMLA License No. 41DBO-157478) and registered to do business in California, Sprout is in the business of originating and then selling residential mortgage loans.

---

[1] Initially capitalized terms used in this Complaint and that are not otherwise defined herein have the same meaning as is ascribed to such terms in the Funding Agreement.

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over the subject matter under 28 U.S.C. § 1332(a)(1) because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      This Court has *in rem* or *quasi in rem* jurisdiction over the Monies Due because the property is located within this Court's geographical domain.

5.      This Court has personal jurisdiction over Sprout because it purposefully directed its activities at California, including California residents who cannot obtain a qualified mortgage due to, among other things, their self-employed status, credit history or low credit score. Banc of California, Suite 1100, Irvine, California 92612 ("Banc of California") operates its business, resides in, and transacts business in this district. Sprout engaged Banc of California to participate in the activities directed at California, and the steps Banc of California performed took place in this district. Banc of California performs administrative, compliance, and financial servicing activities arising from or related to the Pledged Mortgage Loans. FirstFunding is informed and believes, and on such basis alleges, that the Monies Due which Sprout has withheld is being held in accounts at Banc of California. Sprout also has sufficient business or contacts within the State of California to justify jurisdiction under the United States Constitution and the California long-arm statute because, among other things, it has a branch location (NMLS ID# 1969563) at 6501 Irvine Center Drive, Suite 250, Room No. 3, Irvine, California 92618 and one or more bank accounts at Banc of California.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the property that is the subject of the action is located in this judicial district and where a substantial part of the events giving rise to the claim occurred.

# FACTUAL BACKGROUND

**A.    Sprout's business and activities**

7.      Sprout was formed on February 27, 2019 and became one of the fastest growing non-qualified mortgage ("non-QM") lenders in the space. A non-QM loan is any mortgage that fails to meet specific standards of lending set by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (the "Dodd-Frank Act"), which was enacted in response to the 2008 subprime mortgage crisis. Certain parts of the Dodd-Frank Act were rolled back when the Economic Growth, Regulatory Relief, and Consumer Protection Act was signed into law on May 24, 2018, allowing Michael Strauss, Sprout's President and CEO, to found a company that targets underqualified borrowers who it approves for a non-QM loan.

8.      As part of its business, Sprout originates residential mortgage loans by soliciting and securing borrowers and funding and closing on loans to those borrowers.

9.      In order to source the funds required to fund and close the mortgage loans it originates with borrowers, Sprout relies on several different warehouse loans (or lines of credit) to obtain advances.

10.     Because it relies on advances to fund and close the mortgage loans it originates, within a short period of time after origination (e.g., fifteen days), Sprout sells the mortgage loans to Fannie Mae, Freddie Mac, Ginnie Mae or other secondary market participants, with the sale proceeds being applied to pay off the warehouse advances.

11.     Banc of California services the mortgage loans in Sprout's closed loan portfolio as well as mortgage loans sold into the secondary market, service retained. Banc of California's servicing activities include, among other things:

- calculating, holding and applying escrowed amounts;
- delivering customer statements;

- accepting and applying customer payments;

- providing customer service;

- collecting defaulted accounts; and

- maintaining documents, files, records, servicing documents, servicing files, servicing records, data tapes, computer records, and other information pertaining to the past, present, or prospective servicing of the mortgage loans.

**B.    Execution of the Funding Agreement**

12.    On October 5, 2020, Sprout and FirstFunding executed the Funding Agreement under which FirstFunding extended a loan facility in the amount of fifty million dollars ($50,000,000) to Sprout. A true and correct copy of the Funding Agreement is attached hereto as Exhibit A and made part of this pleading.

13.    The same day, and in connection with the Funding Agreement, Strauss entered into an unconditional guaranty agreement (the "Guaranty"). *See* Ex. A (Funding Agreement, Ex. E) at 49-51. The Guaranty is an unconditional guaranty of Sprout's payment obligations under the Funding Agreement to FirstFunding. *Id.* at 50.

14.    On seven different occasions, each at Sprout's request, the parties modified the Funding Agreement. Pursuant to the last modification (dated April 5, 2022), the "Maximum Funding Commitment Amount" was increased to two hundred and thirty million dollars ($230,000,000) from April 5, 2022 to April 30, 2022 and then returned to one hundred and seventy-five million dollars ($175,000,000) on May 1, 2022. True and correct copies of the seven modifications are attached hereto as Exhibit B and made part of this pleading.

15.    FirstFunding advanced money to Sprout pursuant to the terms of the Funding Agreement.

16.    The advances by FirstFunding are secured by the Pledged Mortgage Loans—i.e., the mortgage loans and related collateral (including, without

limitation, all related files, servicing files and servicing rights) that collateralize Sprout's obligations under the Funding Agreement.

**C.    Default of the Funding Agreement**

17.    On July 6, 2022, Strauss informed FirstFunding that Sprout was going to "go under" and "cease operations." This admission that Sprout was unable to pay its debts as they become due and the existence of a material adverse change in the financial prospects of Sprout each constitute an "Event of Default" under the Funding Agreement. *See* Ex. A at 30-32.

18.    As of the date of this admission, the outstanding amount of principal due and owing to FirstFunding under the Funding Agreement was not less than $220,281,891.35 (the "Principal Indebtedness"). This figure does not include any attorneys' fees, court costs, or other out-of-pocket expenses, which are owed to FirstFunding by Sprout under the Funding Agreement.

19.    Sprout is liable to FirstFunding, without offset or defense, for the indefeasible payment in full of the Principal Indebtedness plus all costs, fees, expenses, interest and other charges, including but not limited to, attorneys' fees, under the Funding Agreement.

20.    Sprout has further defaulted under the Funding Agreement by failing to provide FirstFunding copies of all documents, instruments, agreements, information, and files, including credit underwriting files and work papers, generated or utilized by Sprout in connection with any funding to Sprout by FirstFunding, including any Warehouse Interest acquired by FirstFunding.

21.    Sprout is in default under the terms and conditions of the Funding Agreement, and these defaults relieve FirstFunding of any further obligation to make or extend any loan or advance to Sprout or provide any other financial accommodations to Sprout under the Funding Agreement.

22.    Sprout is in default under the terms and conditions of the Funding

Agreement; the defaults are continuing; and the defaults have not been cured.

23.    Despite demand, Sprout has failed and refused, and continues to refuse, to pay FirstFunding the amount of indebtedness due and owing under the Funding Agreement.

24.    All necessary notices under the Funding Agreement or applicable law have been given by FirstFunding to Sprout, and any applicable cure periods under the Funding Agreement with respect thereto have expired.

**C.    Execution of the Cooperation Agreement**

25.    On August 5, 2022, Sprout, Strauss, and FirstFunding executed an agreement with an effective date of July 6, 2022 whereby Sprout and Strauss agreed to, among other things, "cooperate with FirstFunding in . . . exercising its rights and remedies under the [Funding Agreement] and applicable law" (the "Cooperation Agreement"). Ex. C at 4 (¶ 24). A true and correct copy of the Cooperation Agreement is attached hereto as Exhibit C and made part of this pleading.

26.    The Cooperation Agreement expressly provides that, among other things, FirstFunding "is permitted to immediately exercise all of its rights and under the [Funding Agreement] and applicable law." Ex. C at 4 (¶ 23). Sprout "further acknowledge[d] and agree[d] that any and all such actions taken from time to time by [FirstFunding] are hereby approved and ratified by Sprout, including but not limited to: . . . (y) [FirstFunding] receiving Mortgage Loan proceeds directly from Sprout or any borrower under the Mortgage Loans or any purchaser of the Mortgage Loans; (z) [FirstFunding] taking any action or doing anything necessary, as determined by [FirstFunding] in its sole and unfettered discretion, to cause the Mortgage Loan proceeds to be delivered directly to [FirstFunding.]" *Id.*

27.    The Cooperation Agreement also expressly provides that Sprout and Strauss will "promptly and duly execute and deliver any and all such further

instruments and documents and take such further action as [FirstFunding] may reasonably request for the purpose obtaining the full benefits of this Agreement and of the rights and powers herein granted." Ex. C at 4 (¶ 26).

28.     Sprout and Strauss are no longer working cooperatively with FirstFunding to effectuate the prompt disposition of the Pledged Mortgage Loans and reduction of advances under the Funding Agreement to maximize value.

29.     Sprout is in default under the terms and conditions of the Cooperation Agreement; the defaults are continuing; and the defaults have not been cured.

30.     All necessary notices under the Cooperation Agreement or applicable law have been given by FirstFunding to Sprout, and any applicable cure periods under the Cooperation Agreement with respect thereto have expired.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract – Damages)

31.     FirstFunding hereby incorporates by reference each of its allegations contained in paragraphs 1-30 of this Complaint as if set forth herein.

32.     The Funding Agreement constitutes a valid and enforceable contract between Sprout and FirstFunding.

33.     FirstFunding has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Funding Agreement.

34.     Sprout has breached the Funding Agreement by failing to wire transfer, or otherwise deliver, pay, remit and/or return the Monies Due—i.e., all payments made with respect to the Pledged Mortgage Loans held at any and all accounts which were opened or maintained at Banc of California, or any branch or office thereof in California, by, or for the benefit of, Sprout.

35.     FirstFunding is informed and believes, and on such basis alleges, that the amount of the Monies Due held by Banc of California is approximately

$262,500. The exact amount is readily ascertainable from records maintained by Sprout and/or Banc of California. FirstFunding reserves the right to amend this Complaint to allege further facts in this regard as such further facts are discovered or became known. Such monies rightfully belong to FirstFunding.

36.     As a result of Sprout's breach of contract, FirstFunding has been damaged in an amount which FirstFunding is informed and believes amounts to approximately $262,500. FirstFunding reserves the right to amend this Complaint to allege further facts in this regard as such further facts are discovered or became known.

WHEREFORE, FirstFunding prays for relief as set forth herein.

## SECOND CLAIM FOR RELIEF

### (Injunctive Relief)

37.     FirstFunding hereby incorporates by reference each of its allegations contained in paragraphs 1-36 of this Complaint as if set forth herein.

38.     On information and belief, FirstFunding alleges that as a result of Sprout's wrongful conduct and activities, described herein, FirstFunding will suffer great and irreparable harm and damage if Sprout is not enjoined from transferring, using, misappropriating, or converting the Monies Due that belong to FirstFunding.

39.     FirstFunding has no adequate remedy at law for the harm which it has suffered and will continue to suffer in the future unless Sprout is restrained and enjoined from transferring, using, misappropriating, or converting the Monies Due that belong to FirstFunding.

40.     Absent the injunctive relief sought herein, FirstFunding faces a serious risk of suffering irreparable harm from the wrongs that have been and will in the future be performed by Sprout. Sprout's wrongs are of a continuing character and will expose FirstFunding to continuing injury as Sprout continues to withhold the Monies Due.

41.     FirstFunding requests the issuance of temporary, preliminary and permanent injunctive relief enjoining Sprout, and its agents, employees, and all persons acting in concert with Sprout from transferring, withdrawing, using, disposing of, or misappropriating the Monies Due it is holding, either directly or in accounts controlled by it.

WHEREFORE, FirstFunding prays for relief as set forth herein.

## **PRAYER FOR RELIEF**

For the foregoing reasons, FirstFunding respectfully requests that the Court summons Sprout to appear and answer, and that, on final trial, the Court enter a judgment against Sprout as follows:

a.     That FirstFunding be awarded compensatory damages in an amount to be proven at trial;

b.     That Sprout be restrained and enjoined from transferring, withdrawing, using, disposing of or misappropriating any of the Monies Due;

c.     That Sprout pay FirstFunding's reasonable attorneys' fee according to proof;

d.     That Sprout pay the costs of court and expenses incurred by FirstFunding in this action;

e.     That Sprout pay FirstFunding pre-judgment and post-judgment interest on the damages awarded, continuing until such judgment is paid, at the maximum rate allowed by law; and

f.     Such other and further relief, whether general or special, at law or in equity, to which FirstFunding may be justly entitled.

Dated: October 12, 2022                    FROST BROWN TODD LLC

By: */s/ Benjamin A. West*
    Benjamin A. West

Attorneys for Plaintiff
SUSA Financial, Inc. dba FirstFunding, Inc.