Benjamin A. West, Esq., SBN: 338727
bwest@fbtlaw.com
**FROST BROWN TODD, LLP**
2101 Cedar Springs Road, Suite 900
Dallas, Texas 75201
Telephone: (214) 545-3472
Facsimile: (214) 545-3473

*Attorneys for Plaintiff*
*SUSA Financial, Inc. dba FirstFunding, Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| SUSA FINANCIAL, INC. dba FIRSTFUNDING, INC., <br><br> Plaintiff, <br><br> v. <br><br> SPROUT MORTGAGE, LLC, <br><br> Defendant. | Case No. 8:22-cv-01864-JVS-DFM <br><br> **PLAINTIFF SUSA FINANCIAL, INC. DBA FIRSTFUNDING, INC.'S OPPOSITION TO DEFENDANT SPROUT MORTGAGE, LLC'S MOTION TO SET ASIDE ENTRY OF DEFAULT** <br><br> **Concurrently filed with:** <br>   **(1) Declaration of Jim Dunkerley;** <br>   **(2) Declaration of Ben A. West;** <br>   **(3) Proposed Order** <br> Judge:     Hon. James V. Selna <br> Courtroom:  10C <br> Hearing:   April 17, 2023 <br> Time:      1:30 p.m. |

Plaintiff SUSA FINANCIAL, INC. DBA FIRSTFUNDING, INC. ("FirstFunding") files its Opposition to Defendant SPROUT MORTGAGE, LLC's Motion to Set Aside Entry of Default (Dkt. No. 25) ("Motion"), and would show the Court as follows:

# TABLE OF CONTENTS

I.    Summary ................................................................................................ 1

II.   Fact Summary/Timeline .......................................................................... 1

III.  Argument .............................................................................................. 4

      A.   Legal standard. .............................................................................. 4

      B.   Sprout's deliberate and willful failure to answer constitutes
           culpable conduct sufficient to refuse to set aside the default ............... 4

      C.   Sprout cannot establish it has a meritorious defense because—
           in a valid, binding agreement—it has already waived its right to
           do so .......................................................................................... 6

      D.   Setting aside the default at this stage will prejudice
           FirstFunding. .............................................................................. 9

      E.   FirstFunding has pursued the default within the bounds of
           procedure and this Court's order, and Sprout's "good faith"
           argument is unsupported and unavailing ........................................ 11

      F.   Sprout asserts that its actions were "prompt" and it is entitled to
           lenient treatment; nothing about Sprout's actions was "prompt." ...... 14

      G.   Should the Court grant Sprout's motion and set aside the
           default, FirstFunding is entitled to recover its fees and costs. ........... 15

IV.   Conclusion ........................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Chandler Ingram v. HamSquad, Inc. et al.*,
   Case No. 2:21-cv-09664-FWS-KS, 2023 WL 2558395, at *4 (C.D.
   Cal. Jan. 12, 2023) ........................................................................................15

*Coen Co., Inc. v. Pan Int'l, Ltd.*,
   307 F.R.D. 498 (N.D. Cal. 2015)..............................................................15, 16

*Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*,
   840 F.2d 685 (9th Cir. 1988) ..........................................................................5

*Fasuyi v. Permatex, Inc.*
   167 Cal. App. 4th 681 (2008) .......................................................................12

*Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*,
   375 F.3d 922 (9th Cir. 2004) ...................................................................6, 8, 9

*Hayek v. Big Brothers/Big Sisters of America*
   198 F.R.D. 518 (N.D. Iowa 2011) .................................................................11

*Lasalle v. Vogel*
   36 Cal. App. 5th 127 (2019) .....................................................................12, 13

*N. Cent. Ill. Laborers' Dist. Council v. S.J. Groves & Sons Co., Inc.*,
   842 F.2d 164 (7th Cir. 1988) ...................................................................11, 12

*Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La.*
*Hydrolec*,
   854 F.2d 1538 (9th Cir. 1988) .......................................................................15

*Saks v. Int'l Longshore & Warehouse Union-Pac. Maritime Ass'n*
*Benefit Plans*,
   637 F. App'x 282 (9th Cir. 2015)..................................................................4, 9

*Saks v. Int'l Longshore & Warehouse Union-Pac. Maritime Ass'n*
*Benefit Plans*,
   Case No. LA CV09-02885 JAK (Ex), 2013 WL 12170493
   (C.D. Cal. Mar. 13, 2013) *aff'd,* 637 F. App'x 282 (9th Cir. 2015)....................9

*TCI Grp. Life Ins. Plan v. Knoebber*,
   244 F.3d 691 (9th Cir. 2001) ...........................................................................9

*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*,
   615 F.3d 1085 (9th Cir. 2010) ................................................................4, 5, 16

*Zurich Am. Ins. Co. v. Sealink Ins. Svc. Corp.*,
   752 F. App'x 406 (9th Cir. 2018) ....................................................................8

**Other Authorities**

FED. R. CIV. P. 12(a) ................................................................................... 2

FED. R. CIV. P. 55(b)(2) ...................................................................... 11, 13

FED. R. CIV. P. 55(c) ................................................................................... 4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY

Sprout's Motion purports to tell the story of a diligent, overwhelmed defendant doing its best to ensure no stone is unturned in its attempt to respond to a rash of simultaneous lawsuits. The record paints a different picture. In reality, Sprout—who by its own admission was properly served—ignored this lawsuit and only took action *after* a default had been entered by the Clerk, all despite having received actual notice of not only the lawsuit but also FirstFunding's ongoing discovery efforts. Sprout's pattern of willfully ignoring this matter should not be rewarded; FirstFunding has followed both procedure and this Court's orders, and the default should not be set aside.

## II.    FACT SUMMARY/TIMELINE

As detailed in FirstFunding's Motion for Entry of Default Judgment (Dkt. No. 21), FirstFunding and Sprout entered an agreement in October 2020 (the "Funding Agreement"), under which Sprout later defaulted. (<u>Exhibit A</u>, Declaration of Jim Dunkerley ("Dunkerley Decl.") ¶¶ 2-3.)[1] FirstFunding and Sprout then entered a second agreement (the "Cooperation Agreement") in which Sprout agreed to cooperate with FirstFunding's exercise of rights and remedies under the Funding Agreement, but Sprout defaulted under that agreement, too. (Ex. A, Dunkerley Decl. ¶¶ 7-10.) FirstFunding provided all necessary notices of the breach to Sprout and allowed for any applicable cure periods, but when Sprout continued to refuse to pay the amount it owed, FirstFunding filed suit. (Ex. A, Dunkerley Decl. ¶ 6; Complaint (Dkt. No. 1).)

---

[1] The Dunkerley Declaration was previously included in FirstFunding's Motion for Entry of Default Judgment (Dkt. No. 21). Despite having notice of this declaration, Sprout's Motion does not rebut—or even address—the facts asserted in it.

- 1 -

FirstFunding's Complaint was filed October 12, 2022. (Dkt. No. 1.) As it has admitted, Sprout was properly served through its registered agent on October 27th. (Dkt. No. 11; Motion at 7.) Sprout's answer or other responsive pleading was due on or before November 17th. FED. R. CIV. P. 12(a). Sprout never filed an answer or other responsive pleading.

Yet this was not the only notice Sprout received of this lawsuit and FirstFunding's pursuit of recovering the funds owed to it. To support its attempts to recover the amounts owed from Sprout—and following the entry of the Court's order advising the parties to begin actively conducting discovery (Dkt. No. 10)—FirstFunding issued a subpoena for documents to non-party Banc of California. (Exhibit B, Declaration of Ben A. West ("West Decl.") ¶ 3; Dkt. No. 12.) A copy of that subpoena for documents was hand delivered to Sprout's registered agent the same day it was issued, December 5th. (Dkt. No. 12-2 (Ex. B) at 2.) Despite having received the Complaint and notice of the subpoena, Sprout never made an appearance, filed an answer or other responsive pleading, objected to the subpoena or document requests, or moved to quash the subpoena or obtain any other protection from the Court. (West Decl. ¶ 3.)

But the Complaint and initial Banc of California subpoena were *still* not the only notice Sprout received of FirstFunding's lawsuit and pursuit of it. Indeed, on December 16th, FirstFunding's counsel issued a deposition subpoena to obtain the testimony of non-party Banc of California's corporate representative. (West Decl. ¶ 4; Dkt. No. 13.) A copy of this second subpoena was hand delivered to Sprout's registered agent the next business day. (Dkt. No. 13-2 (Ex. B) at 2.) Once again, despite now having been served with the Complaint and two separate discovery subpoenas, Sprout never made an appearance, filed an answer or other responsive pleading, objected to the subpoena or document requests, or moved to quash the subpoena or obtain any other protection from the Court. (West Decl. ¶ 4.)

On January 3, 2023, the Court entered an Order to Show Cause RE Dismissal for Lack of Prosecution, directing FirstFunding by January 31st to either show cause why the matter should not be dismissed or to request entry of default. (Dkt. No. 15.) With no answer or responsive pleading having been filed, FirstFunding filed its Application for Clerk's Entry of Default on January 30, 2023. (Dkt. No. 17.) The Clerk entered default as to Sprout two days later, on February 1st. (Dkt. No. 19.) It was another five days before Sprout made any form of communication (and six days before it was received), through the email (and later telephone call) from Sprout's California counsel, Mr. Freedman. (West Decl. ¶ 6.) With that initial communication, Mr. Freedman asked if FirstFunding would be amenable to an agreed order setting aside its default. (West Decl. ¶ 6; Motion at 7.) Mr. West advised he would discuss with his client to determine FirstFunding's position on the matter. (West Decl. ¶ 6; Motion at 7.) Mr. Freedman followed up on this request a week later, at which time Mr. West had not received a decision from FirstFunding. (West Decl. ¶ 7.)

Eventually FirstFunding decided—having gone to the time and expense of filing suit, pursuing discovery, and obtaining the Clerk's entry of default as directed by the Court—that it was not willing to agree to set that aside for Sprout, who had ignored the lawsuit for more than three months, despite receiving notice multiple times. (West Decl. ¶ 8.) On that basis, and since Sprout had still made no appearance, FirstFunding directed its counsel to move for entry of default judgment, which it did on February 22nd. (Dkt. No. 21.) Only after this did Sprout make an appearance through counsel, nearly four months after being served. (Dkt. No. 22.)

After filing his notice of appearance, Mr. Freedman contacted FirstFunding's counsel and expressed his intent to file the Motion. (West Decl. ¶ 9.) Considering the appearance by Sprout's counsel, FirstFunding agreed to continue the hearing on

its Motion for Entry of Default Judgment, in the interest of judicial economy and collaborative scheduling. (West Decl. ¶ 10.)

## III.   ARGUMENT

Sprout asserts that good cause exists to set aside the default, but the record shows that Sprout cannot meet its burden to support its argument.

### A.   Legal standard.

When default has been entered against a defendant, that defendant may move to set aside the default. FED. R. CIV. P. 55(c). A court may set aside the default "for good cause." *Id.* The moving party bears the burden of establishing good cause. *Saks v. Int'l Longshore & Warehouse Union-Pac. Maritime Ass'n Benefit Plans*, 637 F. App'x 282, 285 (9th Cir. 2015). When evaluating whether "good cause" has been established, the court should consider: (1) whether the movant "engaged in culpable conduct that led to the default"; (2) whether the movant "had a meritorious defense"; and (3) if setting aside the default "would prejudice the non-moving party." *Id.* This test is disjunctive, so a finding for the non-movant on any one of these factors "is sufficient to refuse to set aside the default." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).

### B.   Sprout's deliberate and willful failure to answer constitutes culpable conduct sufficient to refuse to set aside the default.

By its own admission in the Motion and supporting declaration, Sprout— despite being represented by at least two attorneys—ignored this lawsuit and failed to take action until four months after it was served. A defendant's conduct is considered culpable when it "has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Signed Personal Check No. 730*, 615 F.3d at 1092 (emphasis in original). For the court's "good cause" analysis, a defendant's conduct is considered culpable when "there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to

respond." *Id.* Deliberate and willful failure to respond exists here. Because "[w]hen considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, culpability." *Id.* at 1093 (citing *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988) (where defendant was "a lawyer, presumably . . . well aware of the dangers of ignoring service of process")).

Here, by its own admission, Sprout was at all times represented by counsel. (Dkt. No. 25-1, Decl. of Michael G. Freedman ("Freedman Decl.") ¶ 3 ("Sprout was served with most of these lawsuits in New York, *where it had existing counsel . . . .*" (emphasis added)).) No explanation is given as to why Sprout's New York counsel allowed Sprout to ignore this lawsuit. Indeed, Mr. Freedman's declaration reveals that Sprout's New York counsel did not even notify him of this lawsuit until some unspecified date after he was retained at "the end of December 2022"—which was more than two months after Sprout's answer deadline. (*Id.* ¶ 3.) Mr. Freedman's declaration later asserts that he personally did not learn of the lawsuit until February 6th, which is more than three months after Sprout's answer deadline and over a month after he was retained by Sprout, despite acknowledging having discussed Sprout's "numerous" California lawsuits with Sprout. (*Id.* ¶¶ 3, 5; Motion at 7.)

Sprout's own Motion exhibits its culpability. Sprout—represented by New York counsel, who is presumably "well aware of the dangers of ignoring service of process"—did just that. *See Direct Mail*, 840 F.2d at 690. Not only did that counsel ignore the service of the summons and Complaint, he or she also ignored the service of two discovery subpoenas establishing FirstFunding's diligence in pursing the claim. (Dkt. Nos. 12 & 13.)

Sprout then hired California counsel, who took no action, despite having been apprised of Sprout's "numerous" California lawsuits after being retained. (Dkt. 25-1 ¶ 3; Motion at 7.) Sprout now asks this Court to hold that its conduct ignoring this

- 5 -

lawsuit was not intentional, even though at least two attorneys in its service were aware of the lawsuit and that Sprout had been served, and failed to act. Indeed, Sprout's counsel acted only *after* the Clerk's entry of default. (Dkt. 25-1 ¶¶ 3, 5.)

### C. Sprout cannot establish it has a meritorious defense because—in a valid, binding agreement—it has already waived its right to do so.

Sprout asserts that it has a meritorious defense to the lawsuit but fails to meet the standard required for the Court to set aside the default. While a defendant seeking to set aside default must show it has a meritorious defense, simply saying so is not enough. *Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004). Instead, the defendant must present "specific facts that would constitute a defense," as a "'mere general denial without facts to support it' is not enough to justify vacating a default or default judgment." *Id.* (citation omitted). Offering "only conclusory statements that a dispute existed" is insufficient. *Id.* And conclusory statements about a dispute are all that Sprout offers here.

Sprout "vigorously contests that it is liable" and "plans to assert a number of affirmative defenses." (Motion at 11.) But Sprout does not offer a single fact— specific or otherwise—that would support its claim that it has a defense. There is a reason for this: the facts already in the record establish that Sprout has no defense.

Sprout and FirstFunding entered the Funding Agreement, and under that agreement FirstFunding advanced money to Sprout, with those advances being secured by specific mortgage loans ("Pledged Mortgage Loans"). (Ex. A., Dunkerley Decl. ¶ 2.) A copy of the Funding Agreement, which was previously filed along with FirstFunding's Complaint, is <u>Exhibit C</u>. Sprout's President and CEO notified FirstFunding that Sprout was going to "cease operations," at which point it would be in default of the Funding Agreement as defined within that agreement. (Ex. A., Dunkerley Decl. ¶ 3.) At the time of that admission of default, Sprout was indebted to FirstFunding under the Funding Agreement in an amount of at least

- 6 -

$220,281,891.35 (the "Principal Indebtedness"). (Ex. A., Dunkerley Decl. ¶ 4.) Sprout's default under the Funding Agreement continues and has not been cured. (Ex. A., Dunkerley Decl. ¶ 4.) Despite receiving the required notices and demands from FirstFunding, Sprout has failed to pay FirstFunding the amount of debt owed for default of the Funding Agreement. (Ex. A., Dunkerley Decl. ¶ 6.)

About a month after Sprout's President and CEO notified FirstFunding of Sprout's default, the parties entered into a second agreement in which Sprout agreed to, among other things, "cooperate with FirstFunding in . . . exercising its rights and remedies under the [Funding Agreement] and applicable law" ("Cooperation Agreement"). (Ex. A., Dunkerley Decl. ¶ 7.) A copy of the Cooperation Agreement, which was previously filed with FirstFunding's Complaint, is <u>Exhibit D</u>. In the Cooperation Agreement, Sprout makes many admissions that doom any attempts it may make here to "vigorously contest" its liability. These admissions include:

- "The Parties acknowledge and agree that Sprout . . . [is] liable to FF [FirstFunding], ***without offset or defense***, for the indefeasible payment in full of the Principal Indebtedness plus all costs, fees, expenses, interest and other charges, including but not limited to, attorneys' fees" (Ex. D ¶ 5 (emphasis added));

- "The Parties acknowledge and agree that (x) Sprout is in default under the terms and conditions of the [Funding Agreement], (y) that the defaults under the [Funding Agreement] are continuing and (z) Sprout has not cured the defaults under the [Funding Agreement]" (Ex. D ¶ 14);

- "Sprout . . . agree[s] that (a) the [Funding Agreement] . . . [is] legal, binding and enforceable against [Sprout] . . . . Sprout . . . agree[s] that this [Cooperation Agreement] is a legal, valid and binding obligation, enforceable against it in accordance with its terms." (Ex. D ¶ 19);

- "Sprout . . . acknowledge[s] and agree[s] that ***they have no defenses, affirmative or otherwise***, rights of setoff, rights of recoupment, claims, counterclaims, actions or causes of action of any kind or nature whatsoever against [FirstFunding] . . . directly or indirectly, arising out of, based upon, or in any manner connected with, the [Funding Agreement] . . . this

[Cooperating Agreement] . . . . TO THE EXTENT ANY SUCH DEFENSES, AFFIRMATIVE OR OTHERWISE . . . EXIST OR EXTEND, SUCH DEFENSES . . . ARE HEREBY FOREVER WAIVED, DISCHARGED AND RELEASED." (Ex. D ¶ 21 (emphasis added, capitalization in original).)

Sprout warranted that each previous statement was a "true and correct statement[] of fact." (Ex. D ¶ 22.) It has further expressly disclaimed any potential defenses of fraud, duress, undue influence, or coercion. (Ex. D. ¶ 47.)

With the Cooperation Agreement, Sprout pledged to "cooperate with [FirstFunding] . . . in (x) exercising its rights and remedies under the [Funding Agreement] and applicable law and (y) exercising its rights under the terms and conditions of [the Cooperation Agreement]." (Ex. D ¶ 24.) Any breach by Sprout of the Cooperation Agreement constitutes a default of that agreement. (Ex. D ¶ 25.) Sprout has breached the Cooperation Agreement and is in default of that agreement. (Ex. A., Dunkerley Decl. ¶ 9.)

With its Motion, Sprout "vigorously contests" its liability and raises a specter of affirmative defenses. (Motion at 11.) This vague, conclusory language is not only insufficient to meet Sprout's burden to set aside the default, when viewed in context of the agreements between the parties, it rings hollow. *See Franchise Holding II*, 375 F.3d at 926 (offering conclusory statements that a dispute exists are "not enough to justify vacating a default"). Sprout does not present a single specific defense; but even if it did, the defense would not have merit. The "lack of a meritorious defense is sufficient to justify the district court's refusal to set aside the default." *Zurich Am. Ins. Co. v. Sealink Ins. Svc. Corp.*, 752 F. App'x 406, 407 (9th Cir. 2018). Sprout cannot establish—because it does not have—a meritorious defense, so its Motion should be denied.

- 8 -

**D.      Setting aside the default at this stage will prejudice FirstFunding.**

Setting aside a default is prejudicial when "delay will result in loss of evidence, increase the difficulty of discovery, or thwart plaintiff's ability to obtain relief." *Saks v. Int'l Longshore & Warehouse Union-Pac. Maritime Ass'n Benefit Plans*, Case No. LA CV09-02885 JAK (Ex), 2013 WL 12170493, at *4 (C.D. Cal. Mar. 13, 2013), *aff'd,* 637 F. App'x 282 (9th Cir. 2015). This prejudice includes "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001) (citation omitted). The prejudice must be more than "simply delaying resolution of the case," it must hinder the plaintiff's ability to pursue the claim. *Id.* The possibility that a delay in judgment would allow the defendant to move assets establishes that the plaintiff would be prejudiced. *Franchise Holding II*, 375 F.3d at 926-27.

By setting aside the default here, FirstFunding will face prejudice that extends beyond just a delay; indeed, it could very well thwart FirstFunding's ability to obtain relief. If the default is set aside, Sprout is granted greater opportunity to transfer, divert, or misappropriate funds, thereby siphoning away some (or eliminating completely) funds that might now be available to satisfy a judgment.

By its own admission, Sprout faces "numerous lawsuits" in California alone. (Motion at 7.) In his Declaration, Sprout's counsel asserts that there are "a number of lawsuits in California in addition to the instant suit," stating that "the volume of lawsuits" was so great that "it took *several weeks* for Sprout to determine which lawsuits it was facing." (Dkt. 25-1, Freedman Decl. ¶ 3.) Sprout represents that it faces so much litigation that between two attorneys—its New York and California counsel—it took weeks before it could even identify that this lawsuit required a response.

In the meantime, FirstFunding pursued its lawsuit and followed the Court's instructions by filing for entry of default. (*See* Dkt. No. 15 (directing FirstFunding to either request entry of default or show why the matter should not be dismissed).) FirstFunding also began conducting discovery by subpoenaing Banc of California[2] trying to determine what funds—if any—may be available for collection following a judgment. (*See* Dkt. Nos. 12 & 13.)

Sprout owes FirstFunding $262,500, and FirstFunding has reason to believe that all or some of those funds are being held with Banc of California. (Ex. A, Dunkerley Decl. ¶ 12.) Sprout argues that this amount is "significant." (Motion at 13.) FirstFunding agrees; setting aside the default will allow Sprout the time and opportunity to divert or move a significant amount of money, thereby thwarting FirstFunding's attempts at collection.

In its Complaint, FirstFunding pursues not only a claim of breach of contract, but also sought injunctive relief to stop Sprout from "transferring, withdrawing, using, disposing of, or misappropriating" the amounts owed to FirstFunding. (Dkt. No. 1 ¶ 41.) Setting aside the default would only help allow Sprout to do just that—transfer, withdraw, use, dispose of, or misappropriate any existing funds it may have that would satisfy the judgment. And it would unquestionably prejudice FirstFunding if any funds now available to satisfy its judgment were lost as Sprout defends itself from any of a number of the "numerous lawsuits" in which it is entangled.

---

[2] It is FirstFunding's understanding that funds are, or were, begin held for Sprout's benefit by Banc of California. (Ex. A, Dunkerley Decl. ¶ 12.) One of the "numerous" lawsuits in which Sprout is embroiled involves Banc of California. (Dkt. No. 25-1, Freedman Decl. ¶ 3.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### E. FirstFunding has pursued the default within the bounds of procedure and this Court's order, and Sprout's "good faith" argument is unsupported and unavailing.

Sprout asserts that FirstFunding has not pursued the default in "good faith" and that this supports granting its motion to set aside the default. But Sprout fails to identify support for this contention, and ignores that FirstFunding has followed both the requisite procedural rules and this Court's directive to pursue default in the months-long absence of any answer from Sprout. (*See* Dkt. No. 10.)

Tellingly, Sprout supports its proposition with caselaw from the Seventh Circuit and the Northern District of Iowa, practice guides, and inapposite state-court caselaw, but cites no caselaw from this Circuit. (Motion at 12-13.) This is likely because, as FirstFunding has concluded following a diligent search, no caselaw supporting Sprout's assertion that FirstFunding's conduct should "mitigate in favor of setting aside the default" exists from this Circuit. (Motion at 12.) In fact, even the cases cited by Sprout disprove this position and are easily distinguishable.

Sprout cites *Hayek v. Big Brothers/Big Sisters of America* to illustrate an instance in which the district court in Iowa chastised a lawyer for failing to give notice of motion for entry of default. 198 F.R.D. 518, 523 (N.D. Iowa 2001). But this case is easily distinguishable. In *Hayek*, the plaintiff's attorney had entered an agreement with defendant's counsel for an extension (of unspecified length) of time for defendant to file its responsive pleading. *Id.* at 523. Then, three weeks after the *original* deadline, plaintiff's counsel filed a motion for entry of default without notice. *Id.* This action was the "attempt to 'blindside' the defendant" cited by Sprout. But no such agreement for an extension existed here. Indeed, the Clerk's entry of default had already occurred before Sprout ever contacted FirstFunding's counsel.

Continuing with its reliance on non-binding caselaw, Sprout relies on footnote in a Seventh Circuit case chiding the attorney for not providing notice of a default hearing. *N. Cent. Ill. Laborers' Dist. Council v. S.J. Groves & Sons Co., Inc.*, 842

F.2d 164, 169 n.10 (7th Cir. 1988). But in recounting that court's admonishment, Sprout stops short of citing the entire footnote in which the court concludes by stating that, while it does not condone the attorney's failing to provide notice of the default hearing, "[w]e find only that under Rule 55(b)(2) such notice was not legally required." *Id.* Further, the Seventh Circuit here was chiding the attorney for not providing notice of a hearing; Sprout complains that it was not notified of FirstFunding's Motion for Entry of Default Judgment—while acknowledging that it was already aware of the Clerk's entry of default and monitoring the case's docket. (Dkt. No. 25-1, Freedman Decl. ¶¶ 3 & 9.)

Similarly, the California state court in *Fasuyi v. Permatex, Inc.* has harsh words for the attorney who obtained entry of a default without proving the defendant with a "reminder" that a responsive pleading was due. 167 Cal. App. 4th 681, 701 (2008). But this case involved an attorney who obtained entry of default—something that had already happened here. And while granting that defendant's motion for relief, the court made it clear that this was not a hard-and-fast rule, but was wholly fact dependent. *Id.* at 703. In doing so, the court expressly stated that *it was not holding* "that a plaintiff's attorney must warn a defendant's attorney before taking a default," recognizing that "each situation is sui generis and must be analyzed accordingly." *Id.*

The final case Sprout relies on, *Lasalle v. Vogel*, further reinforces the fact-specific nature of a court's decision to set aside a default. 36 Cal. App. 5th 127 (2019). Far from issuing a generalized ruling that a defendant is entitled to relief from default if the plaintiff's attorney did not provide it with notice, the court explained the factors on which it relied, including: (1) communicating a pending default by email or a late-mailed letter was insufficient; (2) quietly taking a default on the first possible day was discourteous; (3) there was a total absence of prejudice to the plaintiff for setting aside the default; (4) malpractice is a claim of "unusual

nature," while claims in which a defendant unquestionably owes a debt are cases "suited for defaults"; and (5) the defendant had a "plainly meritorious defense." *Id.* at 138-39. Exactly zero of those factors apply here. The Clerk's entry of default had already occurred, that entry was not made on the first day possible (it was in fact made more than three months after Sprout's deadline to answer and at the Court's direction), there is substantial prejudice to FirstFunding here (as noted above), this case falls squarely within the *Lasalle* court's definition of a case "suited for default," and Sprout has no defense—meritorious or otherwise.

Though Sprout complains that it was not notified, when the plaintiff seeks to have the court enter a default judgment, the defendant must be served with notice "[i]f the party against whom a default judgment is sought *has appeared personally or by a representative*." FED. R. CIV. P. 55(b)(2) (emphasis added). That never happened here until *after* FirstFunding's motion for entry of default judgment was filed. Here, Sprout's Notice of Appearance of Counsel was filed February 23, 2023, after FirstFunding's motion requesting entry of default judgment (Dkt. No. 21) had been filed.[3]

Sprout also faces no prejudice from FirstFunding's filing a motion for entry of default judgment. Sprout was unaware of FirstFunding's motion for entry of default judgment for less than half a day. FirstFunding's motion was filed at 3:01 p.m. PST on February 22nd. (West Decl. ¶ 8; Dkt. No. 21.) Sprout's notice of appearance of counsel was filed at 11:12 a.m. PST the next day. (West Decl. ¶ 9; Dkt. No. 22.) Sprout's counsel—who had not appeared and thus could not be served electronically—was nonetheless aware of FirstFunding's motion and acting on it

---

[3] Sprout's Notice of Appearance checks the box to state that it is the first appearance of the named attorney (Mr. Freedman) but that "[o]ther members of this attorney's firm or agency have previously appeared in this case." (Dkt. No. 22 at 2.) This is almost certainly a mere clerical error, though, as Sprout has not argued or alleged that it made any appearance before that of Mr. Freedman.

before a reasonable time to provide notice had even expired. It is impossible to understand how FirstFunding is pursuing a "secret" default when (1) Sprout was aware of the Clerk's entry of default; (2) Sprout was aware of the filing of FirstFunding's motion for entry of default judgment within hours of its filing; and (3) FirstFunding agreed to a hearing on Sprout's motion to set aside default first. In truth, FirstFunding has followed procedure and this Court's orders regarding pursuit of default, and there is no support for granting Sprout's motion based on alleged lack of notice.

**F.      Sprout asserts that its actions were "prompt" and it is entitled to lenient treatment; nothing about Sprout's actions was "prompt."**

Finally, Sprout argues that this Court should be lenient toward it because it acted promptly. (Motion at 14.) It is hard to find anything prompt about Sprout's actions here.

First, despite admitting proper service and knowledge of the lawsuit by its New York counsel, Sprout took no action on this lawsuit until more than three months after its answer deadline. (Motion at 7; Dkt. No. 25-1, Freedman Decl. ¶ 3.) And even after it retained California counsel in late December 2022, "it took another month for Sprout and its newly retained counsel to identify the other lawsuits it needed to respond to." (Motion at 10.) No explanation is given as to why Sprout and its newly retained counsel took over a month to "identify" this lawsuit, when Sprout had been properly served with not only the Complaint, but two sets of discovery subpoenas as well. Even something as simple as performing a PACER search for Sprout's name would be a minimal cost and take mere minutes, but Sprout fails to explain why such action was not taken. Instead, Sprout only presents the conclusory statement that its failure to file a timely responsive pleading "was not due to any intentional misconduct or improper motives." (Motion at 10.)

Sprout continues its "promptness" argument by making the demonstrably false assertion that "[a]lthough this motion is being filed after default was entered on February 1, *blame for the delay rests on Plaintiff.*" (Motion at 14 (emphasis added).) The Clerk entered default on February 1; Sprout repeatedly states that its counsel first learned of the Clerk's entry on February 6th. (Motion at 7; Dkt. No. 25-1 ¶¶ 3 & 5.) Sprout's logic in blaming its delay in filing a motion or responsive pleading *on Plaintiff* is indecipherable. Sprout was properly served in October, knew about the lawsuit and FirstFunding's pursuit of it, and took no action of any kind until early February. FirstFunding bears no blame for Sprout's months-long inaction.

Sprout closes with hyperbolic language about how FirstFunding "exploited Sprout's good faith by equivocating . . . and then ambushing Sprout." (Motion at 14.) But Sprout's intent—to provoke ire against FirstFunding—patently ignores both Sprout's own (in)actions and the facts before this Court. Sprout was served, knew about the lawsuit, dithered, and now asks the Court to bail it out. The Court should decline this invitation by denying the Motion.

### G. Should the Court grant Sprout's motion and set aside the default, FirstFunding is entitled to recover its fees and costs.

If the Court does grant Sprout's Motion, the Court also has discretion to award FirstFunding its fees and costs incurred from the pursuit of default following Sprout's failure to answer. Indeed, the court "retains the authority to condition the setting aside of the default on the payment of a monetary penalty." *Chandler Ingram v. HamSquad, Inc. et al.*, Case No. 2:21-cv-09664-FWS-KS, 2023 WL 2558395, at *4 (C.D. Cal. Jan. 12, 2023) (quoting *Coen Co., Inc. v. Pan Int'l, Ltd.*, 307 F.R.D. 498, 508 (N.D. Cal. 2015)). By placing this monetary condition on setting aside the default, "any prejudice suffered by the non-defaulting party as a result of the default and the subsequent reopening of litigation can be rectified." *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec*, 854 F.2d 1538, 1546 (9th Cir.

1988). The most commonly imposed condition "is that the defendant reimburse the plaintiff for costs incurred because of the default." *Coen Co.*, 307 F.R.D. at 508.

FirstFunding has incurred fees in obtaining the Clerk's entry of default and in opposing this Motion and, if Sprout's Motion is granted, is entitled to recovery of those fees. Since this process is ongoing, the total amount of those fees is unknown. Should the Court choose to grant Sprout's Motion and exercise its discretion to award FirstFunding its fees, FirstFunding stands willing to provide evidence of its fees through either (1) testimony by counsel as to its fees at hearing or (2) by submitting a fee application at the Court's direction.

## IV.   CONCLUSION

In its Motion, Sprout alleges "good cause" and asks the Court to set aside the default entered by the Clerk, ignore its months of inaction, and allow litigation to be reopened. Sprout asks all of this despite its culpable conduct, utter lack of defense (meritorious or otherwise), and the prejudice this would impose on FirstFunding. If this Court finds that even one of those factors weighs in FirstFunding's favor, it should refuse to set aside the default. *Signed Personal Check No. 730*, 615 F.3d at 1091. Since all three favor FirstFunding, it asks that the Court deny Sprout's Motion.

But if the Court chooses to grant Sprout's Motion, FirstFunding asks that the Court award it monetary costs in obtaining and defending the default, in an amount to be proven at a later date as directed by the Court, along with any further relief to which FirstFunding may be entitled.

DATED: March 27, 2023               FROST BROWN TODD, LLP

                                    By:  */s/ Benjamin A. West*
                                    Benjamin A. West
                                    *Attorneys for Plaintiff*
                                    *SUSA Financial, Inc. dba*
                                    *FirstFunding, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2023, I electronically filed the foregoing OPPOSITION TO DEFENDANT SPROUT MORTGAGE, LLC'S MOTION TO SET ASIDE ENTRY OF DEFAULT with the Clerk of the U.S. District Court for the Central District of California, using the CM/ECF system.

*/s/ Benjamin A. West*
Benjamin A. West

0149150.0753387   4871-2482-5432v5

- 17 -